JESSE F. KINGSBURY *vs.* CHARLES BURRILL & others.

Suffolk.     January 7, 1890. — February 27, 1890.

Present: DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Contract — Assignment of Fractional Interest — Equitable Assignment.*

The mayor of a city during the late civil war made a contract with a person to pay
him for credits to be procured upon the quota of the city; and such person after-
wards made an assignment under seal of one eighth of his interest in the contract,
and of all his claims against the city by virtue thereof, or of whatever he might
recover under it by settlement, compromise, or otherwise. Subsequently, the
contract having been declared invalid, the city voted a gratuity to such person
in return for his services under the contract; and pending a bill in equity brought
by his assignee's administrator to recover one eighth of the gratuity, the city paid
over the amount thereof to a trustee for the benefit of all parties in interest, to
whom the trustee as well as the city was ready and anxious to pay it. *Held,*
that the assignment included one eighth of all the assignor should receive
from the city because of the contract and his services under it, and was not
limited to such claim as he might legally enforce. *Held, also,* that the as-
signment, upon payment of the money by the city, operated as an equitable
assignment thereof, and that the administrator was entitled to receive one eighth
of the money.

BILL IN EQUITY, filed May 24, 1886, by the administrator of
the estate of Luther Crane, to reach and apply, in payment of a
debt due to Crane from Charles Burrill, the first named de-
fendant, a part of a fund voted to be paid by the defendant city
of Boston to Burrill upon a claim of his against the city, one
eighth of which claim Burrill had assigned to Crane. The city
of Boston, in its answer, alleged that " it is ready and anxious to
pay over said money to the person or persons entitled to receive
the same, and submits itself to the order of the court in that
respect." At the hearing, before *Field,* J., the following facts
appeared.

In the year 1864 the following agreement was made with
Burrill :

" In consideration that Charles Burrill, of Brookline, Mass.,
shall obtain credits upon the quota of the city of Boston, I
hereby agree to pay to said Charles Burrill the sum of one hun-
dred and twenty-five dollars per man for each and every full
man so credited upon said quota, the money to be paid to the

said Burrill whenever he presents to me the official certificate from the proper authority showing that such credits have been given.   F. W. Lincoln, Mayor.   Boston, May 31, 1864."

During the year 1864, Burrill rendered services and incurred some expenses in obtaining credits to be made on the military quota of the city of Boston, for which services and expenses he made a demand upon the city for a large sum of money, the payment of which was refused.   In the year 1867, Burrill made the following assignment, under seal, to Crane :

" Whereas I have a written contract from the city of Boston, of which the following is substantially a copy, [here followed a copy of the above agreement of May 31,] and whereas I have agreed with Luther Crane, of Cambridge, Mass., that I will pay to him one eighth part of whatever money may be paid by the city of Boston upon or on account of said contract, and that said Crane shall own one eighth of my interest in said contract, and of my claim against the city of Boston thereon,

"Now, therefore, for value received, I hereby sell, assign, transfer, and set over to said Crane one eighth part of my interest in said contract, and of all claims which I have against said city of Boston by virtue of said contract, or on account thereof.

" And I further agree that I will pay to said Crane one eighth part of whatever money I may recover of said city on said contract, or on account of said contract, and one eighth part of whatever money the city of Boston may pay in settlement of said contract, or on account of said contract by compromise or otherwise.   In action whereof I hereunto set my hand and seal this 22d day of May, A. D. 1867.   Charles Burrill."

After the refusal of payment by the city of Boston, Burrill commenced an action in the Circuit Court of the United States for the District of Massachusetts against the city, to recover compensation for such services and expenses.   On April 7, 1868, Burrill assigned his claim to Henry W. Paine, and gave notice thereof to the city.   In February, 1869, Burrill presented to the city council of Boston a petition for compensation for his services and expenses, in which he stated that he had resolved to discontinue his action against the city; and subsequently the action was discontinued by him, on May 11, 1869, and final judgment

rendered for the city, on the ground that his alleged agreement with the city was invalid, and that nothing was due him, either on an express contract, or on an implied contract for services.

After the above judgment was rendered, the following order was passed by the city council of the city of Boston, and approved by the mayor, on September 12, 1870:

" Ordered, that there be allowed and paid to Henry W. Paine, as assignee of Charles Burrill, the sum of forty thousand dollars, in full settlement of all claims against the city, and all persons acting personally or in behalf of the city in this matter, for services rendered and money expended by said Burrill in procuring credits upon the quota of the city in 1864; and that the same be charged to the fund appropriated for incidental expenses.    Provided that such receipts and discharges shall be executed both by said Burrill and by said Paine as shall be satisfactory to his honor the mayor and the city solicitor."

Before payment was made in pursuance of this order, the city and its officers were restrained temporarily by injunction, on the petition of certain tax-payers, from making this payment, and the payment was not made.   On April 14, 1871, the Legislature passed the St. of 1871, c. 183, which took effect on its passage, and authorized the city of Boston to pay to Burrill the sum of forty thousand dollars in satisfaction of his services and expenses in procuring credits upon the city's quota, and to raise such sum by taxation or otherwise.   The injunction was dissolved on May 26, 1871, and Burrill and Paine then demanded payment of the city, and tendered such receipts and discharges as were satisfactory to the mayor and city solicitor, but payment was again refused.   Paine then brought an action against the city of Boston upon the above order of September 12, 1870, in which this court ordered judgment to be entered for the defendant, on the ground that the sum voted to be paid by the city was a gratuity, and could not be enforced at law. On December 21, 1885, the city council of Boston passed another order, approved by the mayor on January 2, 1886, also for the payment to Paine, as assignee, of the sum of forty thousand dollars, which was stated to be " in full for services rendered and money expended by said Burrill in procuring credits upon the quota of the city during the war of the re-

bellion." On or about May 21, 1886, receipts and discharges satisfactory to the mayor and the corporation counsel were again tendered to the city; but after the filing of this bill payment was refused, because of the pendency of this and other suits brought by various persons claiming to be creditors or assignees of Burrill. After the filing of this bill an agreement was executed by all the parties interested in the fund, including the plaintiff, in pursuance of which a trustee was appointed to hold such fund for distribution among them, according to their several interests, and the fund was thereupon paid over to such trustee, and was still in his hands. The trustee appeared and filed an answer, in which he admitted that such sum had been paid to him, and that he held it subject to the agreement.

The judge made a decree that the assignment from Burrill to Crane was valid, and that the plaintiff was entitled to receive from the trustee the amount claimed by him, with interest, and reported the case for the consideration of the full court, upon the questions whether the agreement between Burrill and Crane was a valid assignment of an interest in the order of January 2, 1886, and in the money paid to the trustee in pursuance thereof, and whether the bill could be maintained against the city or such trustee.

*A. F. Means*, for the plaintiff.

*C. P. Greenough & J. P. Parmenter*, for Burrill.

C. ALLEN, J. The defence in this case is made by Burrill alone, and it rests substantially on three grounds: 1. That the plaintiff has no claim which he can enforce against the city. 2. That the assignment or agreement of Burrill was limited by its terms to such claim as Burrill might legally enforce against the city. 3. That such an expectation as Burrill had in 1867 of obtaining money from the city was not assignable, even if he used words sufficient to cover it, because what he then had was merely the expectation or hope of a gratuity from the city.

1. The city makes no objection to the plaintiff's claim, and in its answer says that it is ready and anxious to pay over the money to the person or persons entitled to receive it. An assignment of a fractional part of a claim is good in equity,

when the person who is to pay raises no objection.  *James* v.
*Newton,* 142 Mass. 366.  No objection on this ground is open
to Burrill, since the city raises none.

2. Burrill's agreement, by its fair scope and meaning, in-
cluded one eighth of all that he should receive from the city
by reason of his services rendered under the contract signed
by the mayor of the city.  Though this contract was invalid,
and though the sum finally paid must be deemed a gratuity,
there is no doubt that it was paid by reason of services which
were considered valuable, though Burrill had no legal claim for
payment for them, and that those services were the services
contemplated in the contract signed by the mayor.  Though
the money was paid as a gratuity, after the invalidity of the
contract had been established, it was nevertheless paid on
account of said contract, that is, because such a contract had
been made and services had been rendered under it, and it
would be too narrow a construction to hold that he only agreed
to pay to Crane one eighth part of what he might by law be
entitled to recover upon the contract.

3. Such agreement is valid in equity as between the par-
ties, no adverse rights of third parties having intervened.  It
is an agreement to transfer the property when it shall be
obtained.  If the property were tangible, possession might be
taken at once upon its being acquired, and this would make
a title good as against third parties.  But as between the
parties themselves, the right in equity attaches to the prop-
erty before taking possession; in like manner as at law a title
to goods bargained and sold passes to the purchaser, as be-
tween him and the vendor, without any actual delivery.  *Fol-
som* v. *Cornell,* 150 Mass. 115, and cases cited.  In the present
case there were no intervening rights of attaching creditors
or other outside parties, and the question arises simply between
the parties to the agreement.  Burrill, by his contract under
seal, agreed to pay to Crane one eighth part of this money,
when it should be paid by the city.  The money is now ready,
and has actually been paid to a trustee for distribution ac-
cording to the rights of all parties in interest.  Upon such
payment, the agreement becomes operative as an equitable
assignment, which entitles Crane or his legal representative at

once to receive the money. Burrill denies this right, and a bill in equity is maintainable to establish and enforce it. This doctrine has been recognized and stated, and its limitations have been explained, in the recent case of *Blanchard* v. *Cooke*, 144 Mass. 207, and in *Moody* v. *Wright*, 13 Met. 17, in which cases, however, it was necessary to deal with adverse claims of other parties.

This case is not like *Heard* v. *Sturgis*, 146 Mass. 545, 551, where no covenant or agreement looking to the future had been made, and where the question was what present rights of a bankrupt passed to his assignee in bankruptcy.

*Decree affirmed.*