FRANCIS V. BALCH vs. HENRY W. BLAGGE & another.

Norfolk. May 26, 1892. — September 16, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*French Spoliation Claims — Award — Distribution of Money — Next of Kin.*

The U. S. St. of March 3, 1891, last paragraph, relating to awards in payment of French Spoliation Claims, provides "that in all cases where the original sufferers were adjudicated bankrupts the awards shall be made on behalf of the next of kin instead of to assignees in bankruptcy, and the awards in the cases of individual claimants shall not be paid until the Court of Claims shall certify to the Secretary of the Treasury that the personal representatives on whose behalf the award is made represents [sic] the next of kin." Held, on a petition for the distribution of money in the hands of the administrators of an "original sufferer" paid to them on such award, that it was the intention of Congress that the administrators should receive the money solely for the next of kin of the original sufferers, and that the next of kin were to be ascertained as of the date of the death of the original sufferer, independently of whether by next of kin Congress meant nearest kindred, or the distributees of personal property who at the time of the death of the original sufferers would take intestate property under the laws of their domicil, or legatees under wills when the original sufferers left wills.

APPEAL, by Henry W. Blagge and Susan B. Samuels, from a decree of the Probate Court made on February 3, 1892, granting the petition of Francis V. Balch, administrator *de bonis non* with the will annexed, of Henry Hatch, and ordering that a certain portion of the funds in their hands, as administrators *de bonis non* with the will annexed of Crowell Hatch, be paid to Balch, as administrator aforesaid.

Hearing before *Barker*, J., who, at the request of both parties, reserved the case on the petition, decree, order of distribution, and agreed statement of facts, for the full court. The facts appear in the opinion.

*F. Rackemann,* (*F. V. Balch* with him,) for the petitioner.

*J. B. Warner* also filed a brief in support of the petitioner.

*G. A. King,* for the respondents.

*W. G. Russell & J. Fox* also submitted a brief in support of the respondents.

FIELD, C. J. It appears that Crowell Hatch, late of Roxbury in this Commonwealth, died in the year 1805, leaving three

daughters and one son.  By his will all his property was given
in equal shares to the four children.  Of his estate the appel-
lants are administrators *de bonis non* with the will annexed.  Of
each of the three daughters there are descendants now living.
The son, Henry Hatch, of whose estate the petitioner is admin-
istrator *de bonis non* with the will annexed, died, leaving a widow
but no issue.  He left by his will the residue of his estate to his
widow, who never afterwards married.  Crowell Hatch was never
bankrupt, and his estate and the estates of his four children have
always been and are solvent.  The appellants, as administrators
of the estate of Crowell Hatch, have received from the United
States $1,050 for the loss of the brig Mary, being one of the
claims on account of spoliations committed by the French gov-
ernment prior to July 31, 1801, which were reported to Con-
gress by the Court of Claims, pursuant to the statute of the
United States of January 20, 1885, (23 U. S. Sts. at Large, 283,)
and for the payment of which Congress made appropriations by
the statute of March 3, 1891 (26 U. S. Sts. at Large, 862, 900).
By the statutes of Massachusetts in force when Crowell Hatch
died, his estate, after the payment of debts and the expenses of
administration, would have been distributed, if intestate, equally
among his children ; St. 1789, c. 2 ; St. 1805, c. 90, §§ 1, 2 ; and
this is the provision of his will.

The difficulty of determining the distribution to be made of the
money received from the United States arises from the last para-
graph of the statute of the United States of March 3, 1891, which
is in these words : " Provided that in all cases where the original
sufferers were adjudicated bankrupts the awards shall be made
on behalf of the next of kin instead of to assignees in bank-
ruptcy, and the awards in the cases of individual claimants shall
not be paid until the Court of Claims shall certify to the Sec-
retary of the Treasury that the personal representatives on whose
behalf the award is made represents [*sic*] the next of kin, and
the courts which granted the administrations respectively shall
have certified that the legal representatives have given adequate
security for the legal disbursement of the awards."

The statute of the United States of January 20, 1885, in § 1,
provided : " That such citizens of the United States, or their
legal representatives, as had valid claims to indemnity upon the

French government arising out of illegal captures, detentions, seizures, condemnations, and confiscations prior to the ratification of the Convention between the United States and the French Republic concluded on the thirtieth day of September, eighteen hundred, the ratifications of which were exchanged on the thirty-first of July following, may apply by petition to the Court of Claims, within two years from the passage of this act, as here-inafter provided," etc. Section 3 is as follows: " That the court shall examine and determine the validity and amount of all the claims included within the description above mentioned, together with their present ownership, and, if by assignee, the date of the assignment, with the consideration paid therefor," etc. Section 6 is as follows: " That on the first Monday of December in each year the court shall report to Congress, for final action, the facts found by it, and its conclusions in all cases which it has disposed of and not previously reported. Such finding and report of the court shall be taken to be merely advisory as to the law and facts found, and shall not conclude either the claimant or Congress; and all claims not finally presented to said court within the period of two years limited by this act shall be forever barred; and nothing in this act shall be construed as committing the United States to the payment of any such claims."

Under this act the Court of Claims proceeded to examine the claims presented, and its decisions of some of the questions aris-ing before that court are found in *Gray* v. *United States*, 21 Ct. of Cl. 340; *Holbrook* v. *United States*, 21 Ct. of Cl. 434; *Cush-ing* v. *United States*, 22 Ct. of Cl. 1, 28; *Hooper* v. *United States*, 22 Ct. of Cl. 408; *The Ship Betsey*, 23 Ct. of Cl. 277; *The Brig Hiram*, 23 Ct. of Cl. 431, and 24 Ct. of Cl. 31; *The Ship Jane*, 24 Ct. of Cl. 74; *The Ship Ganges*, 25 Ct. of Cl. 110.

The decisions of that court upon the persons who should be petitioners, and upon the effect of the findings of that court, are shown by an extract from the opinion in *The Ship Jane*, 24 Ct. of Cl. 74, 80, which is as follows:

. " The youngest of these claims are now more than eighty-eight years old. The original claimants were merchants, ship-owners, underwriters, partners in trade, joint stock associations, and incorporated insurance companies. Only three of the origi-nal claimants have thus far appeared, and they, it is needless

to say, are bodies corporate. The individuals who lost by
French spoliations were generally men of mature years. Some
transferred their claims; others became insolvent, and their
assets passed to assignees in bankruptcy or became subject to
the operation of divers State insolvent laws; some bequeathed
their claims by will; some died intestate of them; all have long
since passed away. Those claims which passed to assignees in
bankruptcy have not remained in the hands of living witnesses;
for those assignees have died, and their claims have passed to
their administrators, who have, in many cases, likewise died,
and such claims have again changed hands and passed to the
administrators of the administrators. The partnerships were
long ago dissolved, leaving the assets in the custody of the sur-
viving partners, and they have long since died, leaving their
administrators to represent both their own next of kin and the
next of kin of the other partners. The joint stock associations
have been wound up or merged in incorporated companies, leav-
ing behind them obscure questions as to whether the claims
passed to the new companies, or reverted to the original share-
holders, or vested in the survivor of them for the benefit of all.
A majority of the incorporated companies have likewise ceased
to exist, and their claims are in the hands of receivers either for
the benefit of creditors or of stockholders. Then again, many,
if not all, of such creditors and stockholders have died or become
insolvent and their interests have passed into the hands of other
administrators and assignees in bankruptcy.

" Into this labyrinth of unknown and unascertainable rights
and equities the court has not attempted to enter. What it has
endeavored to do is to ascertain the person in whom the legal
title and custody exist; that is to say, the legal representative
who in an ordinary suit at law or proceeding in equity would be
deemed the proper party to maintain an action for the recovery
of similar assets of the original claimants. In the cases of indi-
vidual owners or underwriters the court has required a present
claimant to file his letters of administration and prove to the
satisfaction of the court that the decedent whose estate he has
administered was the same person who suffered loss through the
capture of a vessel. *The Ship Betsey*, 23 Ct. of Cl. 277. In cases
of partnership the court has required evidence of survivorship,
and has allowed only the administrator of the survivor to prose-

cute the claim. In cases of bankruptcy, it has held, under the decisions of the Supreme Court, that the claim passed to the assignee, and that on his death it passed to his administrator (*Erwin's case*, 97 U. S. 392 ; *Richards* v. *Maryland Ins. Co.* 8 Cranch, 84), and where the evidence has shown the bankrupt estate to be still unsettled, the court has held the legal title to be still vested in the assignee. In cases of incorporated companies no longer in existence, the court has required only the decree of a court of competent jurisdiction transferring their rights of action to the hands of a receiver.

" In none of these cases has the court assumed to determine who were the next of kin of a deceased claimant ; nor whether there are any ; nor in what proportion were the several interests of partnership owners ; nor whether creditors or descendants have the superior equity ; nor whether the children of a bankrupt are entitled to a residue of his estate ; nor whether the receiver of a defunct corporation represents creditors or stockholders. In other words, the court has not assumed to determine what persons are legally or equitably entitled to receive the money which Congress may hereafter appropriate for the discharge of these claims."

The Court of Claims from time to time reported its findings to Congress. With reference to the Appropriation Act of March 3, 1891, there are reported the following decisions of that court : *Adams* v. *United States*, 26 Ct. of Cl. 249 ; *Eldridge* v. *United States*, 26 Ct. of Cl. 253 ; *Adams* v. *United States*, 26 Ct. of Cl. 290 ; *Henry* v. *United States*, 27 Ct. of Cl. 142, 145.

In this last case the court say :

" In pursuance of this act," — that is, the original act, — " the court proceeded to investigate such cases as were brought before it and reported to Congress their conclusions of fact and of law in each case. Among the claimants were several assignees, or representatives of assignees, of original sufferers who had been declared bankrupts, and the court reported in those cases that the assignees, or representatives of the assignees, were entitled to receive from the United States the sum found to be the amount of the losses.

" In Congress an appropriation bill was drawn and printed containing appropriations for all the persons named in the reports of the Court of Claims. From that bill were stricken out all

appropriations to assignees in bankruptcy so far as their representative character appeared in the language of the act. This is a decided indication that Congress did not intend to pay assignees in bankruptcy.

"To provide for future cases of like kind they added the proviso now under consideration. It was quite natural that they should designate the findings of the Court of Claims as 'awards.' The reports in spoliation cases are not judgments, and are to be taken to be merely advisory as 'to the law and facts found.' This is so by reason of the express provision of the spoliation act, and is not applicable to cases under the general jurisdiction of the court. The findings in spoliation cases are in the nature of awards and may be properly so designated. To them the word applies with more propriety than to anything in the act itself.

"We hold that the proviso means that in all future reports to Congress the court shall regard the administrator of the original sufferer, representing the next of kin, as entitled to the amounts found due instead of the assignees in bankruptcy wherever the original sufferers were declared bankrupts.

"The court will, however, find the fact of adjudication in bankruptcy and the appointment of assignees, and will report the same for the information of Congress.

"If the administrator obtains the consent of the assignee in bankruptcy in this and other cases now pending, he may come in on motion, and be substituted as claimant."

In examining the Appropriation Act of March 3, 1891, (26 U. S. Sts. at Large, 897–908,) it will be found that, with few exceptions, the persons to whom the sums are appropriated are the administrators of the estates of the original sufferers, or of the estates of assignees of the original sufferers, when the assignees were in fact assignees for value, or of the surviving partners of the original sufferers when they were a partnership. Some are executors or surviving executors of the wills of original sufferers, and the administrators are often designated as administrators *de bonis non*, and sometimes with the will annexed. There are six instances in the act in which the appropriations are to corporations, and, in three of these, the corporations are described as administrators, viz.: On the schooner Mary, "The Rhode Island Hospital Trust Company, three thousand three

hundred dollars." On the brig Mary, "John Stewart, receiver of the Baltimore Insurance Company, eleven thousand dollars." On the schooner Emily, "John Stewart, receiver of the Baltimore Insurance Company, twelve thousand eight hundred and sixty dollars." On the ship Triumph, "Safe Deposit and Trust Company of Baltimore, administrator of Alexander Mactier, two thousand three hundred dollars." On the ship Raven, "The Pennsylvania Company for Insurance on Lives and Granting Annuities, administrators of Thomas M. Willing, deceased, surviving partner of Willing and Francis, seven hundred and eighty-four dollars." On the schooner Frederick, "The Union Trust Company of New York, administrator of Jacob Doty, deceased, twenty-one thousand eight hundred and thirty dollars." There is one appropriation to a trustee, viz.: On the ship Rosanna, "James S. Humbird, trustee, and so forth, sixty-six thousand five hundred and sixty dollars." Congress seems generally to have approved the view of the law taken by the Court of Claims, except in cases "where the original sufferers were adjudicated bankrupt."

It is plain that the persons named in the act are to be paid the sums of money therein appropriated, if they bring themselves within the terms of the proviso. The substantial difference between the Appropriation Act and the reports of the Court of Claims, which were then before Congress, is that all adjudications to assignees in bankruptcy were stricken out of the Appropriation Bill, "so far as their representative character appeared in the language of the act." The proviso may well be taken to mean that, if in fact the persons to whom the money is appropriated are assignees in bankruptcy of the original sufferers, they shall not receive it, but it shall go to the next of kin, and that in the future the Court of Claims shall make no awards in favor of the assignees of bankrupts when the original sufferers had become bankrupt, but the proviso does not deal with the bankruptcy of other persons than the original sufferers. The act itself regards the administrators or executors of the estates of the original sufferers as the persons to whom the money should be paid when the individual claimant is a natural person in distinction from a corporation, and the proviso applies in terms to such cases. The Court of Claims had decided that an insurer who had paid a loss was an original sufferer to

the extent of the money paid, and that certain assignees for value from an original sufferer must be regarded as the owners of the claims whose representatives could prosecute them ; *Holbrook* v. *United States*, 21 Ct. of Cl. 434 ; *Adams* v. *United States*, 26 Ct. of Cl. 249 ; and the act made appropriations accordingly. The personal representatives or legal representatives of an individual claimant must usually, if not always, be the executor or adminis- trator of his estate, and the next of kin must be the next of kin of the original sufferer whom such executor or administrator can represent, and the court which granted the administration is the court to certify " that the legal representatives have given adequate security for the legal disbursement of the awards." As the next of kin are the next of kin of the original sufferer, to be repre- sented usually, if not always, by the administrator or executor of his estate, we think that the next of kin must be ascertained as of the death of the original sufferer. This is the general rule when next of kin take property by bequest or descent. The Court of Claims dealt with these claims as property after the manner of the Alabama and other claims. *Williams* v. *Heard*, 140 U. S. 529. Congress, so far as it made appropriations for the payment of the claims, appears to have so dealt with them, except in the case of the bankruptcy of the original sufferers. The proviso concerning the next of kin may perhaps be taken to indicate that Congress did not intend that the awards should be paid to or for the benefit of the creditors of the original sufferers, but still Congress regarded the money to be paid as a part of the estates of the original sufferers. Congress did not concern itself with the bankruptcy of the next of kin, or with their creditors. If Congress had intended that in all cases the awards should be paid to or for the benefit of the next of kin of the original sufferers who were living at the date of the act, or at the date of the awards, it would have been easy to say so in a few words. In the case of a partnership the money is to be paid to the administrator or executor of the estate of the surviving partner, but it must, we think, be taken to belong to the estates of the several partners, according to their proportionate interests. It is not necessary in the present case to determine whether by next of kin Congress meant near- est kindred, or the distributees of personal property, who at the

time of the death of the original sufferers would take intestate property under the laws of their domicil, or legatees under wills when the original sufferers left wills; it is not even necessary in the present case to determine whether the creditors of the estate of Crowell Hatch are excluded, because it does not appear that there are any. It is agreed that his estate has always been solvent, and if there were creditors they must long ago have been paid in full. It is probable that it never occurred to Congress that, except in case of bankruptcy, there could be existing creditors who, under the laws of the domicil of the original sufferers, would now have valid claims against their estates. We assume, however, that it was the intention of Congress that the administrators should receive the money solely for the next of kin of the original sufferers. We are of opinion that the next of kin are to be ascertained as of the date of the death of Crowell Hatch, whichever of the meanings suggested is regarded as the true construction of the phrase " next of kin."

Since the argument of this case the Supreme Court of Pennsylvania has rendered a decision which takes a similar view of the meaning of the proviso. *Clement's estate*, 150 Penn. St. 85. The decision of the Supreme Court of the District of Columbia is *contra. Gardner* v. *Clarke*, 20 Wash. L. R. 2.

*Decree affirmed.*