ROBERT CODMAN, administrator, *vs.* WILLIAM G. BROOKS, administrator, & others.

Suffolk.    May 24, 25, 1893. — September 12, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*French Spoliation Claims — Award — Distribution of Money — Next of Kin — Will of the Original Sufferer — Validity of Assignment.*

The different parts of the proviso to the U. S. St. of March 3, 1891, § 4, (26 U. S. Sts. at Large, 862, 908,) relating to awards in payment of French spoliation claims, to the effect "that, in all cases where the original sufferers were adjudicated bankrupts, the awards shall be made on behalf of the next of kin instead of to assignees in bankruptcy, and the awards in the cases of individual claimants shall not be paid until the Court of Claims shall certify to the Secretary of the Treasury that the personal representatives on whose behalf the award is made represents [*sic*] the next of kin, and the courts which granted the administrations respectively shall have certified that the legal representatives have given adequate security for the legal disbursement of the awards," as well as the whole legislation on the subject, point to the conclusion that money appropriated by Congress under that statute is to be disposed of under the will of the original sufferer if he left one, and if not it is to pass under the statute of distributions, and in either case is assets protected by the original probate bond of an administrator or an executor. FIELD, C. J. & ALLEN, J. dissenting.

An assignment for a valuable consideration of all a person's interest in claims known as "French spoliation claims," intended to include claims afterwards provided for by the U. S. St. of January 20, 1885, § 1, (23 Sts. at Large, 283,) and for payment of which appropriations were made under the U. S. St. of March 3, 1891, § 4, (26 U. S. Sts. at Large, 862, 908,) is valid.

BILL IN EQUITY, by Robert Codman, administrator with the will annexed of the estate not already administered of William Gray the elder, against Edward Gray, administrator of the estate of William R. Gray and administrator with the will annexed of Francis C. Gray; William Gray Brooks, administrator of the estate of Henry Gray; John C. Ropes and others, executors of the will of John C. Gray; Russell Gray, administrator of the estate of Horace Gray, and William E. Coffin and another, his assignees; Alfred Bowditch, administrator of the estate of Lucia Gray Swett; the above testates and intestates being next of kin of William Gray the elder determined as of the time of his death; and against various other parties, the next of kin of said William Gray, determined as of March 3, 1891, the time of the approval of the act of the Congress of the United States, entitled " An act making appropriations to supply deficiencies in the appropriations for the fiscal year ending June thirtieth, eighteen hundred and ninety-one, and for prior years, and for other purposes."

The prayer of the bill was for the instructions of the court as to the distribution of a sum of money appropriated by Congress under said act to the payment of claims for vessels and other property belonging to the said William Gray the elder, illegally seized and condemned by the French government prior to the treaty of 1800 between France and the United States.

The case was heard by *Morton*, J., and reserved for the consideration of the full court. The facts appear in the opinion.

The case was argued at the bar in May, 1893, and afterwards was submitted on the briefs to all the judges.

*R. H. Dana*, for the plaintiff, read the papers in the case.

*J. Fox*, for the descendants of Lucia Gray Swett.

*J. B. Warner*, for the administrators of William R. Gray and Francis C. Gray, the executors of John C. Gray, and the assignees of Horace Gray.

*H. D. Hadlock*, ( *W. G. Brooks* with him,) for the administrator and the descendants of Henry Gray.

KNOWLTON, J. The plaintiff in this case, as administrator *de bonis non* with the will annexed of William Gray, has received a large sum of money appropriated by Congress under the U. S. St. of March 3, 1891, § 4, (26 U. S. Sts. at Large, 862, 908,) to the payment of claims for vessels and other property belonging to the testator, illegally seized and condemned by the French government prior to the treaty of 1800 between France and the United States.

William Gray left six children, of whom five, who were all sons, were residuary legatees under his will, and the other, Lucia G. Swett, was otherwise provided for. The first question which we have to consider is whether this money is to be divided among the representatives of all his children, or only among those who represent the residuary legatees. The U. S. St. of March 3, 1891, after making appropriations of specific sums to a large number of persons by name, ends with a proviso as follows : " Provided that, in all cases where the orignal sufferers were adjudicated bankrupts, the awards shall be made on behalf of the next of kin instead of to assignees in bankruptcy, and the awards in the cases of individual claimants shall not be paid until the Court of Claims shall certify to the Secretary of the Treasury that the personal representatives on whose behalf the award is made represents [*sic*] the next of kin, and the courts which granted the administrations respectively shall have certified that the legal representatives have given adequate security for the legal disbursement of the awards." This proviso is of doubtful meaning. Some of its clauses seem to point to one intention on the part of Congress, and some to another ; but in determining what disposition is to be made of the moneys to which it refers, the whole statute is to be considered in connection with the previous legislation which it supplements.

It is very clear that the U. S. St. of January 20, 1885, § 1, (23 U. S. Sts. at Large, 283,) under which the Court of Claims acted in making to Congress the reports on which this part of the appropriation bill is founded, treats the French spoliation claims as property belonging to the representatives of the original sufferers. The legislation proceeds upon the theory that the original sufferers had valid claims against the French government which the United States might properly demand and

recover for their benefit, and that when the United States by the treaty of 1800 relinquished these claims for a valuable consideration there was an equitable right of property which Congress ought to recognize in favor of citizens wrongfully despoiled. It is equally clear that the Court of Claims, whose reports to Congress were the foundation of the legislation under which the payments were made, treated these claims as property.

The statute of 1891 follows closely these reports of the Court of Claims. It departs from them only in failing to appropriate anything for the few claimants who represent assignees in bankruptcy and in adding the proviso. The substance and effect of the legislation is a following of the original statute of 1885 and the reports of the Court of Claims under it, in treating these claims as property belonging to the representatives of the original holders, except in those cases where the claims had passed to assignees in bankruptcy during the lifetime of those holders. For good reasons, doubtless, it was thought best not to attempt to revive proceedings in cases in bankruptcy, most of which were ended nearly a century ago, nor to make awards of large sums to those who long ago bought their claims, generally for nominal sums, in the settlement of estates in bankruptcy. By express provision the payments in such cases are to be made for the benefit of the next of kin. This is the only express modification of the theory of the Court of Claims. There would seem to have been little necessity for this provision after the claims in favor of assignees in bankruptcy and their representatives had been stricken from the appropriation bill. But perhaps, as has been decided by the Court of Claims, (*Henry* v. *United States*, 27 Ct. of Cl. 142,) Congress intended this provision as a direction to that court in subsequent cases, and very likely a more important object of the provision was to cover any cases among the large number included in the appropriation bill in which it might subsequently appear that there had been an assignment in bankruptcy, and in which a claim might be made against the administrator under the assignment. Conformably to the views above expressed, it was held in *Balch* v. *Blagge*, 157 Mass. 144, that under this statute the next of kin must be determined as of the date of the death of the original sufferer. The precise question now before us, which was not decided in that case, is whether the proviso

takes the money in each case entirely out of the estate of the deceased person to whose administrator it is appropriated, and divides it equally among the next of kin, notwithstanding the existence of a will which would dispose of it differently, or whether the whole statute taken together indicates a purpose on the part of Congress to have the property administered as the estate of the deceased sufferer according to law. We think the principles established and the reasons given in *Balch* v. *Blagge*, *ubi supra*, require us to hold in the present case that the money goes to the residuary legatees under the will of William Gray, subject to the assignment made by one of them.

Among the persons to whom appropriations are made in this statute, several are described as administrators with the will annexed, which is an indication that the appropriation is of money belonging to the estate, and is at least a suggestion that it is to be administered under the will. Except in case of bankruptcy, there is no express provision that the money is to go to the next of kin, but the Court of Claims is required to certify to the Secretary of the Treasury before payment that the personal representatives represent the next of kin. This would seem to have been inserted by way of caution, to make it certain that the one receiving the award stands as successor to the original sufferer in the settlement of his estate after his death, and represents the next of kin. Such a one is the person through whom the next of kin must obtain whatever of personal property they receive from the estate of their deceased relative. Even if there is a will in which they are not mentioned as legatees, he represents them in a sense, for he stands in the place of their relative in reference to his estate, and if, notwithstanding the will, they make a claim by reason of their relationship, they can obtain nothing except through him.

The last part of the proviso requires a certificate from the court which granted the administration, that the legal representatives have given adequate security for the legal disbursement of the award. We are of opinion that this can mean nothing else than that kind of security which courts that grant administration of the estates of deceased persons are accustomed to take. Such courts could not lawfully require security except in reference to the property of the deceased person, and then only to

dispose of it according to the law of the State where the administration is granted.   Congress could not, if it would, impose upon such courts the duty of requiring any other kind of security, and there is nothing in this statute to indicate that any other kind of security than an ordinary probate bond was referred to.   The object of the provision seems to be to guard against the payment of large sums of money to administrators whose official bonds are for small amounts.   Doubtless Congress did not contemplate the existence of debts which can be enforced at this late day against the estates of the personal sufferers.   It is unnecessary now to decide whether, if such a debt against any person has been kept alive, it can be collected out of money received under this statute; but the different parts of the proviso, as well as the whole legislation on the subject, point to the conclusion that this money is to be disposed of under the will of the original sufferer, if he left one, and if not it is to pass under the statute of distributions, and in either case is assets protected by the original probate bond of an administrator or an executor.

The same conclusion has been reached by the courts of Pennsylvania and Connecticut.   *Clement's estate*, 150 Penn. St. 85. *Leffingwell's appeal*, 62 Conn. 347.   The Supreme Court of the District of Columbia holds otherwise.   *Gardner* v. *Clarke*, 20 Wash. L. R. 261.

It is necessary to consider the effect of the assignment of Henry Gray, one of the residuary legatees, to his four brothers, the other residuary legatees.   That assignment was for a valuable consideration, and included all his right, title, and interest " in and to all notes, balances, claims, and demands, and all other property, real and personal, mentioned in the said schedules, and all not therein mentioned, if any such there be, to which I am or may become in any way entitled as one of the residuary legatees or one of the executors of said William Gray, or in any manner by or through him."   In the schedule referred to, among the "claims on European governments for spoliations on property owned and insured by William Gray from 1796 to 1811," are the following: "Amount of claims on France prior to 1800, p. list, $260,500 ; after 1800, p. list, $162,000."   The claims mentioned in the first item are claims of the kind provided for by the U. S. St. of January 20, 1885, § 1, (23 U. S. Sts. at Large, 283,) and this item undeniably was intended to include

the claims for payment of which the appropriations considered in the present case were made. We see no reason why Henry Gray could not assign all his interest in these claims. *Kingsbury* v. *Burrill*, 151 Mass. 199: *Jernegan* v. *Osborn*, 155 Mass. 207.

We have discovered no error in the rulings or findings of the justice before whom the case was tried. It was not contended that there was any fraud connected with this assignment. Whether the executors made some mistake in their estimate of the value of these claims is immaterial, and on any theory the consideration of the assignment was adequate. Henry Gray's share, namely, one fifth, is to be equally divided among his four brothers. The administrator of the estate of Horace Gray the elder claims only for the benefit of the assignees of his intestate. The money in the hands of the plaintiff will be paid over to the legal representatives of William R. Gray, Francis C. Gray, and John C. Gray, deceased, and the assignees of Horace Gray, deceased.                          *Decree accordingly.*

FIELD, C. J.    After a good deal of hesitation I have come to the conclusion that the most reasonable construction of the proviso under consideration is, that, while the first clause is confined to cases where the original sufferers were adjudicated bankrupts during their lives, the second clause applies to all cases where the original sufferers were natural persons as distinguished from corporations; that the creditors of such sufferers are in all cases to be excluded from receiving the money; that the personal representatives of such sufferers receive the money, not as assets generally of the estates of the original sufferers, but as representing their next of kin and in trust for the next of kin; that the words " next of kin " have the same meaning in both clauses of the proviso; and that these words in neither the legal nor the popular sense include legatees.

Whether the words " next of kin " are held to mean nearest kindred, or distributees under our statutes in force when William Gray died, is, I understand, immaterial, as he left no widow surviving him, and no issue of deceased children. The representatives of his estate, I think, hold the money as intestate property, for the benefit in equal shares of the estates of all his children, the assignees of any child taking that child's share.

Mr. Justice Allen concurs in this view.