## STEPHEN JENNINGS *vs.* WILBUR F. WHITNEY & others.

Suffolk.   November 15, 1915. — May 18, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Lien,* Equitable.   *Assignment,* Validity.   *Equity Jurisdiction,* To enforce equitable lien.   *Contract,* Validity.

An assignment by the maker of a promissory note to the payee, as security for the payment of the note, of "money to be received" by the maker upon the performance, not yet completed, of a contract between him and a third person for the manufacture of certain articles, creates, as between the parties to the assignment, an equitable lien or charge upon the contract price when earned to the amount of the note and interest.

The provisions of U. S. Rev. Sts. § 3477, declaring that all transactions and assignments of any claim upon the United States, or of any part or share thereof or interest therein, shall be absolutely null and void, do not affect the validity, as between the parties, of an assignment, as security for the payment of a promissory note, of "money to be received" by the maker of the note upon the performance by him of a contract with the United States.

Nor is the validity of such an assignment affected, as between the parties to it, by a provision in the contract with the United States "that any transfer of the contract, or of any interest therein, to any person or party by the said party of the first part [the maker of the note] shall annul the same, so far as the United States are concerned."

A Maine corporation with a usual place of business in Boston in this Commonwealth entered into a contract with the United States for the manufacture and delivery of certain navy supplies.   To acquire necessary money for operating expenses, it borrowed money and gave to the lender its note secured by an assignment of "money to be received" on account of the contract.   Subsequently, after it had spent $1,700 toward performance of the contract but before it had completed it sufficiently to be paid any part of the contract price, it was adjudicated a bankrupt.   Receivers, appointed by the bankruptcy court, upon their petition were ordered to sell the assets of the corporation and did so to one of the largest creditors and the sale was confirmed.   No bill of sale was given and the receivers and the purchaser did not intend to give any.   They knew of the assignment to secure the note.   The purchaser, one of the receivers and a third party then formed a Massachusetts corporation of the same name as the bankrupt "to acquire the business formerly carried on by" the bankrupt "with . . . all . . . properties connected with the business . . . the good will . . . and the benefit of all pending contracts."   The purchaser of the assets of the old corporation then transferred them, without a bill of sale, to the new corporation and it carried out the contract with the United States, spending $2,700 more in so doing, and received in payment $4,266.   The payee of the first corporation's

note brought a bill in equity to enforce his lien upon the amount so received by the new corporation. A decree was entered for the plaintiff and, on an appeal by the defendant, it was *held*, that the lien was enforceable, and the decree was affirmed.

BILL IN EQUITY, annexed to a writ of attachment in the Superior Court dated November 18, 1913, and afterwards amended, against Wilbur F. Whitney, the Sub-Target Gun Company, a Massachusetts corporation, the Sub-Target Gun Company, a Maine corporation, and Louis L. G. de Rochemont, the trustee in bankruptcy of the Maine corporation, alleging that the plaintiff was the payee of certain notes given by the Maine corporation to him and the assignee of the proceeds of a contract between the Maine corporation and the United States government, that that corporation had been adjudicated a bankrupt and that receivers of its assets had been appointed, that a sale of rights under the contract had been made by the receivers to the defendant Whitney, who had transferred his rights to the Massachusetts corporation, and that the Massachusetts corporation had completed the contract and had received the pay therefor. The prayers of the bill were that the plaintiff be paid the amounts of his notes and interest from the proceeds of the contract in the hands of the Massachusetts corporation.

The case was heard by *Jenney*, J., a commissioner having been appointed under Equity Rule 35 to take the evidence. The judge filed a memorandum, containing the following, among other findings of fact:

For some time previous to September 16, 1912, there was in existence a corporation organized under the laws of Maine and named the Sub-Target Gun Company. On that date it entered into a contract with the United States to furnish and deliver at the naval torpedo station of the United States at Newport, Rhode Island, as the commandant of that station might direct and within ninety days from said date, numerous parts designed to be used in the construction of torpedoes for $4,694. Time was made an essential element of the contract. The contract further provided that in case the company failed in any respect to perform the contract, the same might at the option of the United States "be declared null and void, without prejudice to the rights of the United States to recover for defaults therein or violations thereof," and that "any transfer of the contract, or of any interest therein, to

any person or party" by the company "shall annul the same so far as the United States are concerned." The company entered upon the performance of this contract.

In November, 1912, being in need of money to carry on its business, the company borrowed of the plaintiff $1,000 and gave to him its note for that amount payable in one month and bearing interest at the rate of one per cent per month after maturity, together with an assignment of "money to be received" on account of the contract, above described, and at the same time agreed in writing that it would set apart that sum from the amount coming due to it from the United States government under the contract, and would not use nor suffer that amount to be used, but would turn it over to the plaintiff with interest in payment of the loan.

On January 7, 1913, the company, needing more money to carry on its business, borrowed of the plaintiff $600 more, and gave to him its note and an assignment upon terms exactly similar to those included in its agreement of the previous November.

Thereafter proceedings in bankruptcy were instituted against the company and receivers were appointed by the United States District Court for the District of Massachusetts. The company then was very largely indebted and the defendant Whitney was a creditor for more than $50,000. There was no evidence that the notes and assignments to the plaintiff were void or voidable as a preference, or that he knew or had reason to believe that the corporation was insolvent at the time when the moneys were advanced by him and the assignments received by him.

At the time of the appointment of the receivers, the company had performed a substantial amount of work under its contract and had expended in that performance approximately $1,700, but it had not completed any of the parts provided for in the contract, and in consequence of such non-completion had not made any delivery under the contract or received any payment on account thereof.

On April 11, 1913, the receivers filed in the District Court a petition for the sale of all the property of the company "including machinery, tools, stock on hand, furniture, patents, interests in patents, contracts, etc.;" and in the petition recited that it was very essential that the property of the bankrupt be disposed of as

a "'going concern' subject to all incumbrances." On this petition, on April 28, 1913, the receivers were ordered to sell such property forthwith.

On May 5, 1913, the receivers reported to the District Court that they had sold "all the property and estate of said bankrupt subject to all liens and incumbrances," to the defendant Whitney for $5,000 and requested that they "be authorized on receipt of the consideration in cash to complete the sale by executing the proper instruments transferring to said purchaser all the right, title and interest in said property, subject to all incumbrances." On the same day that court ordered that the sale be confirmed.

Acting under the authority thus given, the receivers sold and delivered all of the property of the company to the defendant Whitney for $5,000 but gave him no bill of sale or other transfer in writing except assignments of contracts of the company other than that herein involved. The omission to make a formal assignment of the contract in controversy was intentional. The receivers and Whitney then knew of the existence of the assignments to the plaintiff and that the plaintiff had advanced money to the corporation.

Whitney, one of the receivers and one Danforth then caused to be organized a new corporation under the laws of Massachusetts under the name of the Sub-Target Gun Company, the Maine corporation assenting to the use of the name. The certificate of the new corporation provided, among other things, that the corporation was organized "in particular to acquire the business formerly carried on by the Sub-Target Gun Company, with the plant, machinery, stock and all other properties connected with the business, and the good-will of the business, and the benefit of all pending contracts, and the stock in trade thereof."

The property sold by the receivers to Whitney, as well as other property of Whitney, was transferred to the new corporation; but Whitney purposely omitted making any formal written or oral assignment to the new company of the contract in question with the United States.

The new company then took possession of all the property of the old company, including the parts that were in process of completion under the contract with the United States, and finished the torpedo parts substantially in accordance with the original con-

tract. As the parts were completed from time to time, they were shipped to the United States naval station at Newport and were accepted, and the new corporation was paid therefor in accordance with the terms of the original contract. The new company received from the United States under the terms of the contract $4,266.82.

Before completing the parts, the new company sent to Newport an agent who made some arrangement, the terms of which were not in evidence, for the completion of the work required by the contract in accordance with its terms. There was no assent of the United States government, however, to any transfer of the contract to the new corporation or to the assignment to the plaintiff as collateral security.

At the time of the sale of the assets of the company to Whitney, and by Whitney to the new company, the receivers and Whitney believed that the contract had been completed to about eighty per cent of the entire work and materials required thereby, but later it was found that the cost of what had been done under the contract was approximately $1,700. The new company paid approximately $2,700 to complete the contracts. The new corporation, acting through its officers, had full notice of all the facts in regard to the claims of the plaintiff.

The plaintiff did not prove his claim in bankruptcy, and no dividend was paid to the creditors of the corporation.

Pending determination of the suit, the defendant Whitney died and the executors of his will were admitted to defend in his stead.

By order of the judge, a decree was entered, directing the new Sub-Target Gun Company to pay to the plaintiff the amount due to him upon his notes with costs of court, and dismissing the bill without costs against the defendants, executors of the will of Whitney, and de Rochemont, the trustee in bankruptcy of the old Sub-Target Gun Company. The new Sub-Target Gun Company appealed.

The case was argued at the bar in November, 1915, before *Rugg,* C. J., *Braley, De Courcy, Crosby, & Carroll,* JJ., and afterwards was submitted on briefs to all the justices.

*L. L. G. de Rochemont,* for the defendant Sub-Target Gun Company.

*M. L. Fahey,* for the plaintiff.

BRALEY, J. It is settled by *Elmore* v. *Symonds*, 183 Mass. 321, that where the debtor merely gives his personal promise to pay his creditor from a particular fund, the fund is not chargeable with an equitable lien. See in this connection *Westall* v. *Wood*, 212 Mass. 540; *Old Colony Trust Co.* v. *Medfield & Medway Street Railway*, 215 Mass. 156, 160, 161; *Coram* v. *Davis*, 216 Mass. 448, 454. But in the case at bar the bankrupt corporation assigned to the plaintiff all moneys accruing under its contract with the United States to secure the payment of its promissory notes, and by the terms of the assignments an equitable lien or charge as between themselves attached to the contract price when earned in so far as might be required for repayment of the notes. *Security Bank of New York* v. *Callahan*, 220 Mass. 84, and cases cited.

The plaintiff's failure to give notice to the bankrupt's contractee did not affect the plaintiff's rights as against the assignor. *Kingsbury* v. *Burrill*, 151 Mass. 199, 203. *Richardson* v. *White*, 167 Mass. 58, 61. *Walton* v. *Horkan*, 112 Ga. 814. *Columbia Finance & Trust Co.* v. *First National Bank*, 116 Ky. 364. *Muir* v. *Schenck*, 3 Hill, 228. *Cogan* v. *Conover Manuf. Co.* 3 Rob. (N. J.) 809. *Barnes* v. *Alexander*, 232 U. S. 117, 121; 2 R. C. L. Assignments, § 30, and cases cited in notes.

Nor is the lien invalidated by U. S. Rev. Sts. § 3477, declaring that all transfers and assignments of any claim upon the United States or any part or share thereof or interest therein shall be absolutely null and void. The sole purpose of the statute was to protect the government and not the interests of the parties. *Freedman's Savings & Trust Co.* v. *Shepherd*, 127 U. S. 494. *Ball* v. *Halsell*, 161 U. S. 72, 79. *Forrest* v. *Price*, 7 Dick. 16, 28. *York* v. *Conde*, 147 N. Y. 483, 493. It was so assumed in the reasoning in *Jernegan* v. *Osborn*, 155 Mass. 207, 210. And the provisions in article sixth of the contract, "that any transfer of the contract, or of any interest therein, to any person or party by the said party of the first part shall annul the same, so far as the United States are concerned," would not affect the validity of the assignments.

The remaining question is whether the proceeds of the contract in the possession of the defendant corporation is subject to the lien. The assignments being valid at the date of filing the peti-

tion, the receivers held whatever rights the bankrupt had in the contract subject to the lien. *Hurley* v. *Atcheson, Topeka & Santa Fé Railway*, 213 U. S. 126, 134. *Sexton* v. *Kessler*, 225 U. S. 90. U. S. St. 1898, c. 541, § 67e. The money had been lent to enable the bankrupt to go on with the contract, which had not been fully performed at the date of the bankruptcy. It appears, however, to have been an undertaking from which upon completion a very appreciable profit would be realized, and the receivers filed a petition in the bankruptcy court reciting that it was essential that the property should be sold as a "going concern" subject to all incumbrances, and asking leave to sell the machinery, tools, stock on hand, furniture, patents, interests in patents and contracts. A decree accordingly having been entered, a sale followed to the defendant Whitney, to whom the bankrupt was largely indebted as a creditor. The receivers in their report of the sale asked that, upon receipt of the consideration, they be authorized to transfer by proper instruments "all the right, title and interest in said property, subject to all incumbrances," and the order of confirmation was in accordance with the request. It is found that acting under the order they delivered the property to Whitney, "but gave him no written bill of sale or other written transfer except assignments of contracts of the company other than that herein involved." The trial judge further found that while this omission was intentional, all the parties knew of the assignments and of the indebtedness to the plaintiff, who never has proved his claim in bankruptcy.

It results from these proceedings that no property of the bankrupt remained undisposed of, nor did the receivers intend that there should be any; and Whitney by force of the decrees or orders succeeded to all the assets of the bankrupt, including the contract, with the right to complete it and receive the consideration if the assent of the government could be obtained. *C. H. Batchelder & Co. Inc.* v. *Batchelder*, 220 Mass. 42, 44. *Federal Trust Co.* v. *Bristol County Street Railway*, 222 Mass. 35.

The defendant company bearing the same corporate name as the bankrupt was thereupon organized under our laws by Whitney, with whom one of the receivers and one Danforth were joined, for the purpose "in particular to acquire the business formerly carried on by the Sub-Target Gun Company, with the plant,

machinery, stock and all other properties connected with the business, and the good will of the business, and the benefit of the pending contracts and the stock in trade thereof."

The findings of fact that the receivers and the promoters intended the new corporation should be the successor of the old company whose property was to be taken over and its business resumed and prosecuted in so far as possible as if bankruptcy had not intervened and that all the property acquired by Whitney under the orders of sale passed to the defendant company even if he designedly omitted to assign specifically the contract in question, are justified by the evidence reported.

It is clear from the answers to the interrogatories propounded by the plaintiff and from the findings that the company made no new contract with the government but went on and performed the original contract and the consideration received therefor is subject to the lien. *Westall* v. *Wood,* 212 Mass. 540, 544. *Gage Lumber Co.* v. *McEldowney,* 207 Fed. Rep. 255. *Goodnough Mercantile & Stock Co.* v. *Galloway,* 171 Fed. Rep. 940. *In re Olzendam Co.* 117 Fed. Rep. 179.

The decree should be affirmed with costs.

*Ordered accordingly.*